**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

**Tammy Laflamme**

    **v.**                            Civil No. 07-cv-122-PB
                                            Opinion No. 2007 DNH 142

**Commissioner of Social Security**

**MEMORANDUM AND ORDER**

      Tammy Laflamme moves to reverse the Commissioner of Social Security's determination that she is not eligible for Supplemental Security Income ("SSI"). Laflamme argues that the Administrative Law Judge ("ALJ") erred when he found that she is not disabled and can perform sedentary work. For the reasons set forth below, I conclude that the ALJ's decision is supported by substantial evidence. Therefore, I deny Laflamme's motion to reverse and grant the Commissioner's motion to affirm.

**I.   BACKGROUND[1]**

**A.   Procedural History**

      Laflamme received "adult child" disability benefits on the

---

     [1]   The background information is drawn from the Joint Statement of Material Facts (Doc. No. 12) submitted by the parties. Citations to the Administrative Record Transcript are indicated by "Tr.".

record of her father from 1987 to 1996, but the benefits were terminated in 1996 when she married.  Tr. at 227-28.  She applied for SSI in October 2004 and July 2005, claiming that she was unable to work because of scoliosis and arthritis.  Tr. at 39-44, 225.  Laflamme's SSI claims were denied and she sought review before an ALJ.  Tr. at 30.  A hearing before ALJ Frederick Harap was held on August 21, 2006, where Laflamme was represented by counsel.  Tr. at 222.  On August 30, 2006, ALJ Harap issued a written decision applying the five-step sequential analysis from 20 C.F.R. § 416.920(a) and concluding that Laflamme is not disabled within the meaning of the Social Security Act.  Tr. at 11.

Laflamme requested review of the hearing decision and her attorney submitted a letter in support of the appeal.  Tr. at 219.  The Appeals Council denied Laflamme's request for review on March 16, 2007.  Tr. at 5.  Laflamme now brings this action, seeking review of the agency's final determination pursuant to 42 U.S.C. § 405(g).

## B.   **Education and Work History**

Tammy Laflamme (née Atwood) was born on May 5, 1966.  She graduated from Berlin High School in Berlin, New Hampshire, at

-2-

age 20, having attended some mainstream classes and some special education classes where she had individual instruction.  Tr. at 95.  Laflamme has never held a job.  Tr. at 228.

**C.   <u>Medical History</u>**

Laflamme was born with mild cerebral palsy and kyphoscoliosis (lateral and posterior curvature of the spine). Tr. at 114.  At age three, Laflamme had tibial derotation osteotomy surgery on both of her legs to correct the position of her feet.  Tr. at 118.  When she was a teenager, she also had foot surgery for bunions and ankle surgery to correct subluxing peroneal tendons.  Tr. at 118.

In 1986, when Laflamme was 20 years old, she had fusion surgery to correct kyphoscoliosis, fusing her spine at T4–T12. Tr. at 100, 102–03, 109–10.  As a result of the surgery, Laflamme has a metal rod implanted in her back.  Tr. at 102.  Laflamme did not require ongoing medical treatment after recovering from the surgery, but she did see the doctor who had been her spinal surgeon in 1997, Dr. Clark, complaining of back pain.  Tr. at 192–205.  Laflamme began wearing a back brace, walking and doing home exercises, and using over-the-counter pain remedies as needed.  Tr. at 192–205.  Laflamme and Dr. Clark discussed other

-3-

treatment possibilities including surgery and physical therapy, but Laflamme stopped going to physical therapy and never had additional surgery.  <u>Tr.</u> at 200, 205.  Laflamme saw Dr. Paul Urbanek for a second opinion in October 1998.  Dr. Urbanek confirmed Dr. Clark's diagnosis and recommended stretching and strengthening exercises and the use of non-steroidal anti-inflammatory drugs.  <u>Tr.</u> at 203-04.

In 1999, Laflamme was in a car accident where she slightly injured her neck.  <u>Tr.</u> at 148-49.  Nevertheless, by 2001, Laflamme's medical records indicate that she was doing well and that her back was stable.  <u>Tr.</u> at 147.  At her 2003 checkup, she complained of intermittent right hip pain, but no special treatment was undertaken for this and she continued to walk for exercise.  <u>Tr.</u> at 140.  Laflamme slipped and fractured her ankle in 2004; her fracture healed without any complications or problems.  <u>Tr.</u> at 133, 135-36.

D.  **<u>Application for SSI and Related Proceedings</u>**

    1.  **<u>2004 Application</u>**

Laflamme first applied for SSI in October 2004.  <u>Tr.</u> at 54. She filled out an Activities of Daily Living statement where she

reported that she requires help with some household chores such as carrying groceries up to her third-floor apartment, lifting heavy laundry baskets, and vacuuming.  <u>Tr.</u> at 54-58.  Laflamme also stated that she walks in the woods, walks to her mother's house, goes to church, goes shopping with her husband, reads, and watches television.  <u>Tr.</u> at 54-58.

A Residual Functional Capacity ("RFC") Assessment was completed by Disability Adjudicator Linda Ellsworth on November 3, 2004.  <u>Tr.</u> at 59-68.  Ellsworth found that Laflamme could occasionally lift 10 pounds, frequently lift 10 pounds, stand or walk at least 2 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday.  Ellsworth also found that Laflamme could only occasionally engage in climbing, balancing, stooping, kneeling, crouching, or crawling, but had unlimited ability to push and or pull and no manipulative, visual, communicative, or environmental limitations.  Ellsworth concluded that Laflamme had an RFC for sedentary work.  On November, 4, 2004, Laflamme's claim for SSI was denied.  <u>Tr.</u> at 31.

### 2.  **2005 Application**

Laflamme again applied for SSI in July 2005.  She filled out another Activities of Daily Living statement, providing

substantially similar answers to the ones she had provided in 2004.  Tr. at 69-74 (see above description).

A second RFC Assessment was completed by Disability Examiner Patty Skidmore on July 7, 2005.  Tr. 75-83.  Skidmore found that Laflamme could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk about 6 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday.  Skidmore also found that Laflamme had occasional postural limitations with climbing, balancing, stooping, kneeling, crouching, and crawling, but that Laflamme was unlimited in her ability to push or pull and had no manipulative, visual, communicative, or environmental limitations.  Skidmore concluded that Laflamme had an RFC for unskilled light work including work as a flagger, mail clerk, or photocopy machine operator.

Dr. Gary Francke examined Laflamme in connection with her claim for SSI on September 12, 2005.  Tr. at 190-91.  Dr. Francke concluded that Laflamme "does preserve the ability to do basic work related activities such as sitting, standing, walking, lifting, carrying, and bending.  She does not like to lift heavy weights and probably should be restricted from heavy lifting."

-6-

Tr. at 191.  On September 26, 2005, Laflamme's claim for SSI was
denied.  Tr. at 35.

### 3.  **Appeals Process**

Laflamme retained Attorney Francis Jackson as her
representative on October 20, 2005.  Tr. at 28.  Through her
attorney, Laflamme promptly requested a hearing to review the
denial of her SSI claim.  Tr. at 30.  In preparation for this
hearing, Laflamme reconnected with Dr. Keith Shute, who had been
her primary care doctor but whom she had not seen since 2003.
Tr. at 212.  Dr. Shute conducted a disability evaluation on July
27, 2006, at Laflamme's request.  Tr. at 212–14.

In connection with the evaluation, Dr. Shute filled out a
Medical Source Statement of Ability To Do Work–Related Activities
(Physical), where he stated that Laflamme could occasionally lift
10 pounds, frequently lift less than 10 pounds, stand for a
maximum of 30 minutes without needing to change position due to
back pain, sit for less than 6 hours in an 8–hour workday with
need to periodically alternate sitting and standing to relieve
pain or discomfort, occasionally kneel, and never climb, balance,
crouch, crawl, or stoop.  Tr. at 206–09.  Dr. Shute also noted
that Laflamme has occasional problems reaching, but no visual,

communicative, attention, or concentration problems.  <u>Tr.</u> at 208.
Finally, Dr. Shute noted that temperature extremes, vibration,
humidity/wetness, and environmental hazards could exacerbate
Laflamme's back pain.  <u>Tr.</u> at 209.

Dr. Shute's final conclusion was that Laflamme would be
unable to reliably and consistently perform sedentary light work
for 8 hours per day, five days per week.  <u>Tr.</u> at 209.  He
recommended a functional capacity evaluation for a more detailed
assessment, but this evaluation was never completed.  <u>Tr.</u> at 14,
209.

**D.   <u>The ALJ Decision</u>**

The hearing before ALJ Harap was held on August 21, 2006, in
Littleton, New Hampshire.  <u>Tr.</u> at 222.  Laflamme was represented
by counsel and the only two witnesses were Laflamme and her
mother, Maureen Atwood.  <u>Tr.</u> at 222-37.

ALJ Harap applied the following five-step sequential
evaluation process in determining whether or not Laflamme should
be considered disabled:  (1) whether the claimant is engaged in
substantial gainful activity; (2) whether the claimant has a
severe impairment; (3) whether the impairment meets or equals a
specific impairment listed in the SSA regulations and meets the

-8-

duration requirement; (4) assessment of RFC and whether the claimant can still do past relevant work; and (5) assessment of claimant's RFC, age, education, and work experience, to see if claimant can make an adjustment to other work.  20 C.F.R. § 416.920(a).  The burden of proof is on the claimant for the first four steps of the evaluation, but, at the fifth step, the burden is on the Commissioner to demonstrate that there are jobs in the national economy that the claimant can perform.  See, e.g., Freeman v. Barnhart, 274 F.3d 606, 608.

ALJ Harap concluded at step one that Laflamme had not engaged in any substantial gainful activity as of the alleged onset date (October 1, 2004).  Tr. at 13.  He concluded at step two that Laflamme's scoliosis post-fusion surgery and mild cerebral palsy are severe impairments within the meaning of 20 C.F.R. § 416.920(c).  Tr. at 13.  At step three, the ALJ found that Laflamme has normal sensory, motor, and reflex function, is able to walk without assistance, and demonstrates normal gait and station.  Tr. at 14.  Therefore, the impairment did not meet the SSA requirements described in step three.  Tr. at 14; see 20 C.F.R. § 416.920(a)(4)(iii).  The ALJ concluded that Laflamme retains the RFC to sit for at least 6 hours during the day,

consistent with sedentary exertional activity, and to lift 10
pounds occasionally with occasional standing and walking.  Tr. at
14.

The ALJ found that while Laflamme's impairments could
produce the symptoms that Laflamme was alleging, Laflamme's
statements about the intensity, persistence, and limiting effects
of the symptoms were not credible.  Tr. at 14.  The ALJ placed
more weight on Dr. Francke's opinion than on Dr. Shute's opinion,
reasoning that the clinical observations and reports by both
doctors supported the conclusions of Dr. Francke more than the
conclusions of Dr. Shute.  Tr. at 14.  He noted that Laflamme has
an active daily life, is not under regular medical care, and
takes no prescription medication.  Tr. at 14.

## II.    STANDARD OF REVIEW

I am authorized pursuant to 42 U.S.C. § 405(g) to review the
pleadings submitted by the parties and the transcript of the
administrative record and enter a judgment affirming, modifying,
or reversing the decision of the ALJ.  My review is limited to
whether the ALJ used the proper legal standards and found facts
based upon the proper quantum of evidence.  Ward v. Comm'r of

Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000); Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

The ALJ's findings of fact are accorded deference as long as they are supported by substantial evidence.  Ward, 211 F.3d at 655.  The ALJ's factual findings must be upheld "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).  The ALJ's factual findings are conclusive if there is substantial evidence to support his or her decision, even if the record "arguably could support a different conclusion."  Id. at 770.  The ALJ's findings are not conclusive, however, when they are derived by "ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen, 172 F.3d at 35.

The ALJ is responsible for determining issues of credibility and for drawing inferences from evidence on the record.  Ortiz, 955 F.2d at 769.  It is the role of the ALJ, not the role of this court, to resolve conflicts in the evidence.  Id.

### III.  **ANALYSIS**

-11-

Laflamme argues that the ALJ erred by:  (1) improperly interpreting raw medical evidence, (2) improperly rejecting the opinion of Dr. Shute, the treating physician, (3) failing to discuss or assess the significance of certain limitations found by Dr. Shute, and (4) failing to properly develop the record and make sufficient inquiry into the effects of Laflamme's impairments.  Additionally, Laflamme argues that the ALJ erred in failing to assess the severity of Laflamme's mental impairments. Each of Laflamme's claims is addressed in turn.

**A.    Interpretation of Raw Medical Evidence**

Plaintiff is correct that, ordinarily, an ALJ is not qualified to interpret raw data from a medical record.  See Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996).  This does not mean, however, that medical data must be diregarded entirely unless it is viewed through the lens of expert testimony.  "Of course, where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment."  Id.

In this case, there was ample evidence in the record to support the ALJ's common sense conclusion that Laflamme has the

-12-

RFC to perform sedentary work.  The ALJ's conclusion is supported by Dr. Francke's 2005 report and by the data contained in Dr. Shute's reports from 2001 to 2006.

Laflamme's medical records from 2001 until the present demonstrate that her back was stable and required no intervention or specialty doctor's visit.  See Tr. at 138 (2003 annual exam), 142 (2002 annual exam), 147 (2001 two year follow-up).  In her Activities of Daily Living statements made in both 2004 and 2005, Laflamme stated that she needed help with some household tasks including carrying groceries up to their third-floor apartment, vacuuming, and laundry, but that she walked for exercise in the mornings and walked to her mother's house often.  See Tr. at 54-58, 69-74.  Laflamme stated that she was able to cook, go grocery shopping with her husband, watch television, and go to church. See Tr. at 54-58, 69-74.  Prior to her July 2006 appointment with Dr. Shute in connection with her SSI claim, Laflamme had not been under the regular care of a physician for nearly three years. See Tr. at 212.  At that appointment, she stated to Dr. Shute that she walked 1-2 miles, 7 times per week.[2]  See Tr. at 213.

_____

[2]There is some ambiguity in Dr. Shute's report as to Laflamme's daily exercise.  Under "Exercise per Week," Shute

Laflamme takes no medication for her back other than occasional over-the-counter remedies and stated to Dr. Shute at her July 2006 appointment that she did not desire a prescription for any medication.  <u>Tr.</u> at 73, 212.

Because the medical evidence in the record demonstrates relatively little physical impairment, the ALJ did not err by drawing his own conclusion about how Laflamme's medical impairments impact her functional capacity.

**B.    <u>Improper Rejection of Treating Physician's Conclusion</u>**

A "treating source" is a physician with whom the claimant has an ongoing treatment relationship.  20 C.F.R. § 416.902.  A treating source may be a physician who has evaluated a claimaint only a few times or only after long intervals, if that is typical for treatment or evaluation of the claimant's condition.  <u>Id.</u>  A physician is not considered a "treating source," however, if the relationship is based solely on the need to obtain a report in support of a disability claim.  <u>Id.</u>

---

noted:  "walk x7 1-2 miles." <u>Tr.</u> at 213.  ALJ Harap interpreted Shute's notation to mean that Laflamme walks seven and one-half miles each week, but I interpret the notation to indicate that she walks 1-2 miles seven times per week.  The discrepancy is not significant to my conclusion.

-14-

Case 1:07-cv-00122-PB   Document 14   Filed 11/27/07   Page 15 of 21


The Social Security Administration has determined that a treating source's medical opinion must be given controlling weight if it is well-supported and not inconsistent with other substantial evidence in the record.  S.S.R. 96-2p (1996).  It is also true, however, that "[e]ven if a treating source's medical opinion is well-supported, controlling weight may not be given to the opinion unless it is also 'not inconsistent' with the other substantial evidence in the case record."  Id.  Thus, the ALJ must determine whether a medical opinion from a treating source is both "well supported" and "not inconsistent" in a given case. Id.  As the SSA states:

> Sometimes, there will be an obvious inconsistency between the opinion and the other substantial evidence; for example, when a treating source's report contains an opinion that the individual is significantly limited in the ability to do work-related activities, but the opinion is inconsistent with the statements of the individual's spouse about the individual's actual activities, or when two medical sources provide inconsistent medical opinions about the same issue.

Id. at 3.

The SSA also draws a distinction between medical source statements and RFC assessments.  Assessment of an individual's RFC is an issue that is reserved to the Commissioner.  S.S.R. 96-5p (1996).  The relevant SSA policy interpretation states:

"treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance." <u>Id.</u> at 2.

Dr. Shute stated in Laflamme's medical record in July 2006 that he did not consider himself to be Laflamme's treating physician capable to render a medical opinion about her functional limitations because he had not seen her since December 2003. <u>Tr.</u> at 212. Even if Dr. Shute is considered a "treating source," his conclusion that Laflamme would be unable to reliably and consistently perform sedentary or light work is inconsistent with Dr. Francke's opinion and is arguably inconsistent with Laflamme's own statements about her capacity and Dr. Shute's own recorded observations 2001–2003 and 2006. Therefore, Dr. Shute's opinion is not entitled to controlling weight. <u>See</u> S.S.R. 96–2p (1996). Additionally, the ultimate conclusion as to Laflamme's RFC must made by the ALJ, not the treating physician. <u>See</u> S.S.R. 96–5p (1996) at 4. To permit such a conclusion to be drawn by a treating physician "would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." <u>See</u> <u>id.</u>

**C.   <u>Failure to Discuss or Assess Certain Limitations</u>**

Plaintiff correctly points out that the ALJ's opinion failed to discuss two types of limitations indicated by Dr. Shute:  1) that Laflamme needs to periodically alternate sitting and standing to relieve pain and discomfort, and 2) that Laflamme must never stoop.  The fact that the ALJ did not explicitly discuss these two points in his opinion does not mean, however, that he failed to assess these limitations.  The record contains substantial evidence from which the ALJ could conclude that Laflamme's RFC was not significantly impacted by these alleged limitations.

It is the ALJ's duty to evaluate the credibility of witnesses and resolve conflicts in the evidence.  <u>Ortiz</u>, 955 F.2d at 769.  ALJ Harap determined that while Laflamme's symptoms could reasonably be considered the product of her impairment (scoliosis post-surgery), "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."  <u>Tr.</u> at 14.  As the ALJ noted, Laflamme walks 1-2 miles every day for exercise, is not currently taking medication, and is an active person:  she attends church, goes shopping, performs light housekeeping tasks, watches

-17-

television, and visits with her mother daily.  Thus, there was
substantial evidence to support the ALJ's conclusion that
Laflamme has the ability to sit and stand as required for
sedentary work.

Dr. Shute's conclusion regarding Laflamme's inability to
"stoop" is contradicted by the 2004 and 2005 RFC assessments by
Ellsworth and Skidmore and by Dr. Francke's assessment that
Laflamme can bend and tilt sideways to touch her knee.  <u>See</u> <u>Tr.</u>
at 190-91.  As discussed above, the ALJ was entitled to give more
weight to Dr. Francke's opinion than to Dr. Shute's.

**D.   <u>Failure to Properly Develop the Record</u>**

Plaintiff argued that ALJ Harap erred by issuing his
decision without the benefit of medical or vocational testimony
at the hearing and without re-contacting Dr. Shute.  Plaintiff
also argues that the ALJ failed to properly develop the record by
inquiring further into the effects of Laflamme's impairments on
her ability to work.

Prior to the hearing, the ALJ notified Laflamme that at the
hearing she could submit documents, present and question
witnesses, and present written statements about the facts and the
law.  <u>Tr.</u> at 23.  Laflamme was represented by counsel at the

-18-

hearing, but only Laflamme herself and her mother (as a last-minute addition) testified as witnesses.  Laflamme could have presented additional witnesses or evidence, but she did not. Although the hearing was short and there were few witnesses, there is substantial evidence in the record to support ALJ Harap's conclusion that Laflamme was not disabled.

Laflamme is correct that it is appropriate for an ALJ to re-contact a treating source "if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record...." S.S.R. 96-5p (1996) at 6. In this case, Dr. Shute did state the basis of his opinion:  "My opinion is based upon review of medical records, patient hx [history], and PE [physical examination] today."  Tr. at 209. While the ALJ could have weighed the evidence in the record differently to place more weight on Dr. Shute's opinion, there is substantial evidence in the record to support the ALJ's decision. Therefore, I must uphold the ALJ's decision.  See Ortiz, 955 F.2d at 770.

**E.    Failure to Address Mental Impairments**

Plaintiff also argues that the ALJ erred by failing to assess the severity of her mental impairment.  While the record does show that Laflamme attended some special education classes in high school, Tr. at 95, nothing in the record indicates that Laflamme has a mental impairment that would indicate or contribute to a disability.  Laflamme is a high school graduate, able to read, write, and communicate in English, and there is no suggestion from any physician or report in the record that she suffers from, as her brief suggests, "borderline intellectual functioning."  It would not have been appropriate for the ALJ to address mental impairment when the issue was never raised in any of Laflamme's applications for SSI or at the hearing.  The impairment is not apparent, and no significant impairment has been noted in Laflamme's medical records.

**IV.    CONCLUSION**

For the reasons discussed above, plaintiff's motion to reverse (Doc. No. 10) is denied and defendant's motion to affirm

(Doc. No. 11) is granted.  The Clerk shall enter judgment

accordingly.

SO ORDERED.


_____
Paul Barbadoro
United States District Judge


November 27, 2007

cc:  Francis M. Jackson, Esq.
     Karen B. Fitzmaurice, Esq.
     David M. Broderick, AUSA